**Julian SHERRIER, Plaintiff,**

v.

**Bernice RICHARD, Defendant.**

**No. 82 Civ. 3723 (RWS).**

United States District Court,
S.D. New York.

Dec. 19, 1985.

See also, 600 F.Supp. 527.

## MEMORANDUM OPINION

SWEET, District Judge.

Defendant Bernice Richard ("Richard") has brought a motion pursuant to Fed.R. Civ.P. 60(b)(3) seeking to vacate the judgment in this action on the basis of "fraud ..., misrepresentation, or other misconduct on the part of [the] adverse party" Julian Sherrier ("Sherrier"). Sherrier has brought a cross-motion seeking amendment of the judgment. As set forth below, Richard has raised a factual issue regarding the alleged fraudulent use of forged documents in the trial of this action which requires a factual hearing before the underlying motions can be resolved.

### Prior Proceedings

The bitter and protracted proceedings in this action began with the filing of Sherrier's complaint on June 7, 1982, alleging that he owned five pieces of Gandharan art which were being withheld by Richard. After expedited discovery pursuant to an order to show cause for a preliminary injunction, a consolidated hearing and non-jury trial on the merits was held during October, 1982. Judgment rendered by this court's opinion of March 16, 1983 held that Richard and Sherrier had entered into a joint venture for the purchase of Gandharan art and that the four pieces of art obtained through this partnership should be divided between the two parties. The court further found that one large piece was solely owned by Sherrier subject to Richard's security interest and that another bronze piece was solely owned by Richard. An equitable judgment was accordingly rendered.

The final judgment of the court was subjected to several assaults which are fully set forth in the subsequent opinions of April 27, June 22, July 10, in 1984 and January 4, January 22, and May 14 of 1985. Briefly, this post-trial peregrination was commenced by an order granting Richard permission to take additional testimony from the witnesses which directly contradicted Sherrier's claimed expenditure of $50,000.00. Upon this finding, the judgment was amended but not fully reopened. The Court of Appeals affirmed this amendment, holding that the false testimony regarding the alleged $50,000.00 downpayment did not require that the judgment be vacated in light of the independent evidence establishing the joint venture and the rights of the parties. Following further applications by Richard to take additional testimony which were granted, several additional depositions have now been completed and the present motions have been submitted following oral argument on October 11, 1985.

### Facts

#### A. Forged Exhibits

In support of the order to show cause which initiated this action, Sherrier submitted an affidavit dated June 3, 1982 which set forth his version of the facts underlying his claim. Together with his affidavit, Sherrier submitted several exhibits which purported to be receipts for the purchases of Gandharan statuary in 1979 and 1980. These pieces—the Standing, Seated, Elongated and Princely Buddhas—were later found by the court to have been purchased by Sherrier using the funds of Richard within the scope of the joint venture. The receipts were written on the stationery of the "Oriental Import and Export Agency", in Peshawar, Pakistan and contained either the signature or typewritten acknowledgement of Mohammed Siddick ("Siddick"), the proprietor of that business.

In addition to these receipts, Sherrier produced for the court an affidavit dated August 11, 1982 which purported to be a statement by Siddick setting forth a list of the four Gandharan pieces and their prices. The affidavit further stated that Siddick

had given Sherrier a silver collection on consignment but that Sherrier, unable to sell the silver, had returned the silver to Siddick's representative in December, 1980.

Each of these documents were introduced at trial after a foundation had been laid by Sherrier. Sherrier testified that he was familiar with Siddick's signature, having often seen invoices signed by Siddick in connection with his business in Peshawar. The authenticity of these documents have been challenged by Richard on this motion. In response to the post-trial issuance of letters rogatory to Siddick which were executed before the High Court of Peshawar on April 2, 1985, Siddick denied any knowledge of Sherrier or of the transactions which formed the basis of this action. More significant than these bare denials is the fact that Siddick's signatures on the letters rogatory appear to differ markedly from the signatures on the documents offered at trial.

Richard has submitted the opinions of three experts in handwriting analysis which conclude that the signatures on the receipt and affidavit submitted at trial were not written by the same person who responded to the letters rogatory. Sherrier's response has been two-fold. Sherrier offers another expert who reaches the opposing conclusion that there exist sufficient similarities in the signatures to conclude that the same person signed each document. The expert for Sherrier suggests that the signatures on the trial documents were written in a distorted manner and hypothesizes that the writer was attempting to disguise his signature. Sherrier supports this conclusion by arguing on this motion that Siddick must have desired to avoid detection of his trading in Gandharan objects by attempting to disguise his signature. Alternatively, Sherrier argues that any discrepancy in signatures may be explainable on the hypothesis that Siddick may have sought to avoid detection by taking the further step of having a surrogate sign the documents in his stead.

As further indication of the forged nature of Siddick's affidavit, Richard notes that the affidavit was notarized by a Pakistani Notary Public at Rawalpindi, located 150 kilometers distant from the Peshawar address of Siddick. Richard argues that there exist numerous notaries in Peshawar who are competent in the English language and, therefore, the execution of the document in Rawalpindi raises the inference that the affidavit was executed by another person.

The resolution of this alleged use of fraudulent evidence cannot be made on the basis of the papers submitted by the parties but rather must be determined after a factual hearing on this issue.

### B. False Testimony

Richard further asserts that Sherrier's testimony at trial was perjured in many material respects, and specifically focuses on Sherrier's testimony regarding his dealings with Siddick, his possession of a silver collection in 1980, his relationship with Bedar Shah ("Shah"), and his possession of several other Gandharan art objects in 1980.

After preliminary examination of the evidence setting forth the basis for alleging the perjured testimony of Sherrier, the court finds no need to request any additional fact-finding on these issues since the evidence is fully set forth in the excerpts from post-trial depositions and exhaustive analysis by skilled counsel. However, since at least one issue—the relationship between Sherrier and Siddick—may be influenced by the evidence relating to the Siddick exhibits, the court will reserve its findings on these matters until the factual hearing on the allegedly forged exhibits has been presented.

For the foregoing reasons, a hearing on the veracity of the documents allegedly prepared by Mohammed Siddick will be held during the week of January 6–10, 1986 or as soon thereafter as permitted by the schedules of counsel for both parties.

IT IS SO ORDERED.